UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

GASLIGHT SQUARE, INC.,

                                    Case No.:  8:12-bk-14765-KRM
                                      Chapter 11

              Debtor.

_____/

## CHAPTER 11 DISCLOSURE STATEMENT, DATED MAY 3, 2013

Denise D. Dell-Powell, Esq.
Florida Bar No.:  890472
Michael A. Nardella, Esq.
Florida Bar No.: 51265
**BURR & FORMAN, LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL  32801
Phone:  (407) 540-6607
Fax:  (407) 264-6466
Email: denise.dell-powell@burr.com
Email: michael.nardella@burr.com

**ATTORNEYS FOR Wells Fargo Bank, N.A. as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-CIBC11, acting by and through its special servicer C-III Asset Management LLC**

Dated: May 3, 2013.

1945752 v1

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN AND RELY UPON THE INFORMATION PROVIDED IN THE DEBTOR'S DISCLOSURE STATEMENT (DKT. NO. 55) AND CERTAIN OTHER PUBLICLY AVAILABLE DOCUMENTS. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF REGARDLESS OF THE DATE OF ACTUAL DELIVERY OF THE DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS SHOULD CAREFULLY READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING THE EXHIBITS, PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, C-III ASSET MANAGEMENT, LLC, OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR, C-III ASSET MANAGEMENT, LLC, OR HOLDERS OF CLAIMS OR EQUITY INTERESTS.

CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENTS

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS AND EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE ("IRC"); AND (B) HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

CAUTIONARY STATEMENTS CONCERNING DEBTOR'S PROJECTIONS, VALUATION OF ASSETS, ESTIMATION OF CLAIMS AND FINANCIAL STATEMENTS; FORWARD-LOOKING STATEMENTS:

CERTAIN INFORMATION CONTAINED HEREIN, INCLUDING THE DEBTOR'S VALUATION OF ASSETS, ESTIMATION OF CLAIMS AND FINANCIAL STATEMENTS WERE OBTAINED BY C-III ASSET MANAGEMENT, LLC, FROM INFORMATION PUBLICLY DISCLOSED BY THE DEBTOR IN THE DEBTOR'S DISCLOSURE STATEMENT AND OTHER PUBLIC FILINGS OR WERE OBTAINED FROM PUBLICLY AVAILABLE SOURCES.

ALTHOUGH C-III ASSET MANAGEMENT LLC, AND ITS REPRESENTATIVES CONDUCTED A LIMITED REVIEW AND ANALYSIS OF THE DEBTOR'S BUSINESS, ASSETS AND LIABILITIES IT RELIED UPON THE ACCURACY AND COMPLETENESS OF ALL SUCH INFORMATION PUBLICLY FILED BY THE DEBTOR AND ASSUMED THAT SUCH INFORMATION WAS REASONABLY PREPARED IN GOOD FAITH AND ON A BASIS REFLECTING THE DEBTOR'S MOST ACCURATE CURRENTLY AVAILABLE INFORMATION.

C-III ASSET MANAGEMENT LLC, AND ITS ADVISORS AND REPRESENTATIVES DID NOT INDEPENDENTLY VERIFY OR SEEK INDEPENDENT VALUATIONS OF SUCH INFORMATION IN CONNECTION HEREWITH. THE INCLUSION OF SUCH INFORMATION HEREIN SHOULD NOT BE REGARDED AS AN INDICATION THAT C-III ASSET MANAGEMENT LLC, OR ANY OF ITS ADVISORS OR REPRESENTATIVES CONSIDERS SUCH INFORMATION TO BE AN ACCURATE PREDICTION OF FUTURE EVENTS OR A COMPLETE AND ACCURATE REFLECTION OF THE DEBTOR'S CURRENT FINANCIAL CONDITION AND SUCH INFORMATION SHOULD NOT BE RELIED ON AS SUCH. NEITHER C-III ASSET MANAGEMENT LLC, NOR ANY OF ITS ADVISORS OR REPRESENTATIVES ASSUMES ANY RESPONSIBILITY FOR THE REASONABLENESS, COMPLETENESS, ACCURACY OR RELIABILITY OF SUCH INFORMATION AND DOES NOT INTEND TO UPDATE OR OTHERWISE REVISE SUCH INFORMATION TO REFLECT CIRCUMSTANCES EXISTING AFTER THE DATE WHEN MADE OR TO REFLECT THE OCCURRENCE OF FUTURE EVENTS EVEN IN THE EVENT THAT ANY OR ALL OF THE ASSUMPTIONS ARE SHOWN TO BE IN ERROR.

CERTAIN MATTERS DISCUSSED HEREIN ARE FORWARD-LOOKING STATEMENTS THAT ARE SUBJECT TO CERTAIN RISKS AND UNCERTAINTIES HAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM THE STATEMENTS INCLUDED HEREIN AND SHOULD BE READ WITH CAUTION. THESE STATEMENTS INCLUDE, BUT ARE NOT LIMITED TO: ESTIMATED VALUE OF THE DEBTOR'S ASSETS AND THE AMOUNT OF ALLOWED NON-INSIDER UNSECURED CLAIMS. THESE STATEMENTS REFLECT CURRENT VIEWS AND ASSUMPTIONS THAT MAY BE AFFECTED BY VARIOUS FACTORS, INCLUDING THE LENDER'S ABILITY TO CONFIRM AND CONSUMMATE THE PLAN AND DISCHARGE OR SETTLE CLAIMS DURING THE CHAPTER 11 CASE, ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THESE STATEMENTS

1945752 v1

WILL PROVE ACCURATE, AND ACTUAL RESULTS MAY BE MATERIALLY DIFFERENT THAN THOSE CONTAINED HEREIN.

THE DEBTOR HAS ON FILE ITS OWN PROPOSED PLAN OF LIQUIDATION (THE "DEBTOR'S SALE PLAN"). C-III ASSET MANAGEMENT, LLC (THE "LENDER") CONTENDS THAT THE DEBTOR'S PLAN IS UNCONFIRMABLE AND SUBJECT TO NUMEROUS LEGAL AND EQUITABLE DEFECTS. ACCORDINGLY, THE COURT DENIED THE DEBTOR'S SALE PLAN. THE BANKRUPTCY COURT MAY CONFIRM ONLY ONE PLAN FOR THE DEBTOR. IF THE DEBTOR FILES ANOTHER PLAN AND BOTH ARE CONFIRMABLE AND COMPLY WITH THE REQUIREMENTS OF 11 U.S.C. § 1129, THE BANKRUPTCY COURT WILL HAVE A CERTAIN DEGREE OF DISCRETION IN DETERMINING WHICH PLAN OF REORGANIZATION TO CONFIRM PURSUANT TO SECTION 1129(C) OF THE BANKRUPTCY CODE, BUT "SHALL CONSIDER THE PREFERENCES OF CREDITORS AND EQUITY SECURITY HOLDERS IN DETERMINING WHICH PLAN TO CONFIRM."

## I.   INTRODUCTION

This is the Disclosure Statement (the "Disclosure Statement") in the Chapter 11 case of Gaslight Square, LLC. This Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan of Reorganization of Gaslight Square, LLC as Proposed by C-III Asset Management, LLC, Dated May 3, 2013 (the "Plan").

> *YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.*

### A.   Purpose of this Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the United States Bankruptcy Court for the Middle District of Florida (the "Court") will consider when deciding whether to confirm the Plan,

- Why the Lender believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as this Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights. All terms used herein shall have the meaning set forth herein or, if not defined herein, shall have the meaning set forth in the definitions section of the Plan.

### B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.   Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan

The Court will set a hearing to determine whether to confirm the Plan.

1945752 v1

### 2.    Deadline For Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the plan, vote on the ballot and file the ballot with the Clerk of the United States Bankruptcy Court, at this link: https://pacer.flmb.uscourts.gov/cmecf/ballots/submission.asp.    See section IV.A. below for a discussion of voting eligibility requirements.

**Your ballot must be *received* by the Clerk of the United States Bankruptcy Court by the deadline set by the Court, or it will not be counted.**

### 3.    Deadline For Objecting to the Adequacy of the Disclosure Statement and Confirmation of the Plan

Objections to the confirmation of the Plan will be set by Order of the Court.

### 4.    Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Denise Dell-Powell, Burr & Forman, LLP, 200 S. Orange Ave, Suite 800, Orlando, FL 32801, Phone: (407) 540-6600, Fax: (407) 650-2777, E-mail: ddpowell@burr.com.

### C.    Disclaimer

*The Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved or conditionally approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. This Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.*

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor, Gaslight Square, LLC ("Debtor" or "Gaslight," as appropriate), was formed in 2004, as a Florida Limited Liability Company. Gaslight was formed as a single purpose entity to acquire, operate, lease and liquidate real estate. Gaslight acquired property located at 6798 Crosswinds Dr., St. Petersburg, Florida 33710 (the "Property").

### B.    Insiders of the Debtor

The Debtor has two members, each of whose interest in the Debtor is set forth below. The Debtor currently pays the members $2,000 per month. The Debtor's Equity Security Holders are:

Gerard D'Souza (50%)
Shama D'Souza (50%)

C.     **Management of the Debtor Before and During the Bankruptcy**

Gerard and Shama D'Souza (the "D'Souzas") have managed the Debtor since incorporation.

After the Effective Date of the Order confirming the Plan, the Property and all other collateral of Lender will be transferred and conveyed.  Any existing Management Agreement will be terminated. The Lender's Plan and the distributions to be made thereunder are not dependent on upon the future operations of the Property. Management of the Debtor post-reorganization is not relevant because the recoveries under the Lender's Plan are not dependent upon future operations.

D.     **Events Leading to Chapter 11 Filing**

The Lender is the holder of a secured claim on substantially all the Debtor's assets, including the Property and all cash generated by the Property, for a loan made by Lender to Debtor and related to the Property.  To secure repayment of that loan, the Debtor executed in favor of and delivered to Lender various documents, including a mortgage and security agreement, an assignment of leases and rents, a cash management agreement, and various financing statements.  As a result of the execution of these various documents (the "Loan Documents"), Lender obtained a first priority mortgage lien upon and security interest in substantially all of the Debtor's property, both real and personal, including without limitation, the Property.  Lender now owns and holds the Loan Documents.  As a result, Lender is entitled to all of the rights and remedies provided for under the Loan Documents and under the laws of the State of Florida

The Debtor failed to make its payments to Lender as required under the Loan Documents and filed for bankruptcy to forestall foreclosure of the Property.

E.     **Significant Events During the Bankruptcy Case**

Since the petition date, the Debtor has continued to operate the business and manage the Property as debtors-in-possession under Sections 1101(a), 1107 and 1108 of the Bankruptcy Code.

The Debtor filed the Debtor's Sale Plan on December 18, 2012.  On March 14, 2013, the Court held a hearing and denied confirmation of the Debtor's Sale Plan.  The Debtor had until March 25, 2013, to file an amended plan, and has as of the date of this Disclosure Statement, failed to file any amended plan.

The Lender believes that the Debtor's Sale Plan, and any similar plan, is patently unconfirmable because it violates numerous provisions of the Bankruptcy Code.

The Lender has proposed the Lender's Plan which it believes to be a better and more viable alternative to the Debtor's Sale Plan and complies with all applicable provisions of the Bankruptcy Code.  The salient terms of the Lender's Plan are summarized below:

1945752 v1

- The Lender's Plan provides for a marketing period and sale of the Property in satisfaction of Lender's claims against the Debtor.

- The Lender reserves all rights against any and all guarantors.

- The Lender has voluntarily agreed to carve out from its collateral a sufficient amount of cash to fund the amounts required by the Lender's Plan.

- The Equity Interests of the existing holders of equity will be extinguished under the Lender's Plan.

### F.    Projected Recovery of Avoidable Transfers

The Lender or its designee intend to pursue preference, fraudulent conveyance, and other avoidance actions, including any actions for unauthorized post-petition transfers to insiders of the Debtor, to the extent such claims exist.

### G.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Lender reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article 11 of the Plan.

### H.    Current and Historical Financial Conditions

The Property has a current fair market value of approximately $1,500,000.00 to $2,000,000.00, below the Lender's allowed claim amount of $3,924,695.11.

As best as the Lender can determine, the Debtor holds approximately $25,000.00 in cash assets, unknown amounts in accounts receivable, and physical personal property of unknown value. All cash assets are the collateral of the Lender and will be transferred to Lender under the Plan or used to fund the Plan.

In addition, the Debtor disclosed in its Statements and Schedules that it paid a retainer of $15,000.00 to its counsel. Such retainer constitutes the cash collateral of the Lender, and the Lender intends to apply any unused retainer (after payment of any Allowed Administrative Claim) against its indebtedness and/or permit a portion of such unused retainer to fund other claims under the Lender's Plan.

## III.    SUMMARY OF THE CHAPTER 11 PLAN AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    What is the Purpose of the Chapter 11 Plan?

As required by Chapter 11 of Title 11 of the United States Code (the "Code"), the Plan places Creditors and Equity Security Holders in various classes and describes the treatment each class will receive on account of their allowed claim amounts. The Plan also provides whether

each class of Claims or Equity Security Holders is impaired or unimpaired. Unimpaired classes will receive payment in full on their allowed claim amounts. Impaired classes will receive either payment in full under circumstances less advantageous than previously agreed upon between the claim holder and the Debtor or pro rata payment of their allowed claim amounts. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan and will be paid on terms set forth in the Plan, as confirmed.

## B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

### 1.    Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed pursuant to § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the petition date of February 12, 2010 ("Petition Date"). The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | Unknown | Paid in full in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; |
| Professional Fees, not yet approved by the Court.<br><br>**Counsel for the Debtor** | Unknown | Paid in full in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder. Lender, however, reserves the right to object to the amount of any of these professional fees |
| Clerk's Office Fees | Unknown | Paid in full on the effective date of the Plan |
| Other administrative expenses | Unknown | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | Unknown | Paid in full on the effective date of the Plan |
| TOTAL | Unknown | |

Finally, the Lender will carefully scrutinize the application of counsel for the Debtor, and other claimants and reserves the right to object to any fees as it appears obvious that little to no benefit has been provided to the estate for some time now.

2.    **Priority Secured and Unsecured Tax Claims**

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

1945752 v1

The Lender anticipates that there will be no § 507(a)(8) priority tax claims, or, to the extent any such claims are filed, they will be in an amount below $1,000.00. In the event any such priority tax claims are filed, they will be paid in full on the effective date of the Plan.

Priority secured tax claims are secured income, employment, and other taxes described by § 507(a)(8) of the Code, but are secured by property of the Debtor's estate. Unless the holder of such a secured § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

The Secured Claim of the Pinellas County Tax Collector is such a priority secured tax claim and is entitled to priority treatment and not a class entitled to vote on the Plan and cannot be involuntarily "impaired." The Secured Claim of the Pinellas County Tax Collector will be paid in full on or before the Effective Date of the Lender's Plan.

### C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.    Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. In general, if the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, any deficiency will be classified as a general unsecured claim unless the creditor is a non-recourse lender or has made an election pursuant to 11 U.S.C. § 1111(b).

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class | Description | Impairment | Description of Treatment |
|---|---|---|---|
| Class 1 | Secured claim of: Lender<br><br>Collateral description: the Pledged Collateral as defined in the Plan and Claim 2-1<br><br>Priority of lien: First | Impaired | On account of its Allowed Class 1 Secured Claim, Lender shall as of the day prior to the Effective Date set off against the Allowed Class 1 Claim the amounts then held by or for it in any repair and replacement reserve, tax and insurance reserve, or any other reserve or other trust account maintained in accordance with the applicable loan documents or any Order entered in the Bankruptcy Cases, and either (i) in the event the Lender (or its designee) is the Buyer, on the Effective Date have conveyed to it, or its designee, free and clear of all liens, claims and encumbrances, all of the Purchased Assets, and have assumed and assigned to it, or its designee, all executory contracts and unexpired leases of the Debtor not previously rejected; or (ii) on the Effective Date receive payment from the Disbursing Agent of the remaining amount of its Allowed Secured Claim from the proceeds of the sale of the Purchased Assets. Notwithstanding anything herein to the contrary, the Lender or its designee will be permitted to credit bid, at the Auction, the amount of its total Claim against the Debtor. In addition, any excess cash collateral not necessary to fund implementation of this Plan will be transferred to the Lender at the Lender's direction. |
| CKS | | | |

2.      *Class of Lessee Depositors*

Lessee Depositors are current tenants of the Debtor for whom the Debtor is holding a security deposit.

The following chart sets forth the Plan's proposed treatment of the class of Lessee Depositors:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| Class 2 | Lessee Depositors | Unimpaired | Lessee Depositors, Tenants on the Property who hold leases of portions of the Property, will have their leases assumed as of the Effective Date of the Plan through confirmation of the Plan and their lease deposits will be transferred into a post-confirmation segregated account utilized solely to hold lease deposits or to the Buyer. |

3.    *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| Class 3 | General Unsecured Class | Impaired | The Lender will voluntarily carve out of its cash collateral sufficient funds such that all holders of Class 3 Allowed Claims will share pro-rata in the pool of $5,000.00, which will result in impairment of the holders of the Class. Lender will not assert an unsecured deficiency claim for payment in this Class. |

4.    *Class of Equity Security Holders*

Equity Security Holders are parties who hold an ownership interest in the Debtor. In a limited liability company, the members of the LLC are Equity Security Holders.

The following chart sets forth the Plan's proposed treatment of the class of Equity Security Holders:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|

1945752 v1

| Class 4 | Equity Security Holders | Impaired | Equity Security Holders shall be extinguished under the Plan. |
|---------|-------------------------|----------|---------------------------------------------------------------|

### D.    Means of Implementing the Plan

There is sufficient cash on hand, which, although the cash collateral of Lender, Lender will voluntarily use to pay all valid administrative and other claims to be paid on the Effective Date of the Plan.

There will be an Auction conducted on a date to be set by the Bankruptcy Court, but in no event more than 45 days after entry of the Confirmation Order.  At the Auction, all of the Purchased Assets (as defined in the Lender's Plan), shall be made available for sale.  The Debtor and each of its directors, officers, employees, managers and agents shall comply with the Sale Procedures, including, without limitation, by providing reasonable access to the Debtor's books, records, executives, and manager to the qualified bidders for the purpose of conducting due diligence  The sale contemplated by the Auction shall be on an all cash basis (except to the extent subject to credit bid by the Lender), with the Closing to occur within fifteen (15) days after the Auction.

No later than fifteen (15) days after the Auction, the Successful Bidder shall close the purchase of the Purchased Assets by delivering to the Disbursing Agent cash equal to the Successful Bid and by completing and executing all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which such Successful Bid was made.  At the Closing, the Successful Bidder shall have assumed by a Debtor, as appropriate, and assigned to the Buyer all of the executory contracts and unexpired leases of the Debtor which were not previously rejected.   At Closing, the Debtor's officers, directors and other agents shall execute such deeds, bills of sale, assignments, closing statements and other documents as may be reasonably requested by Lender, its counsel, the Buyer, and its counsel. To the extent, if at all, Debtor and/or its officers, directors and agents fail or refuse to execute any such document, then and in such event, upon the *ex parte* application of Lender or the Disbursing Agent, the Bankruptcy Court shall enter an order pursuant to and in accordance with Bankruptcy Rule 7070 authorizing the Disbursing Agent to execute and deliver all such documents, and perform such other acts as are required to be performed by a Debtor, and any such document so executed by, or act undertaken by, the Disbursing Agent, shall have the same effect as if executed or performed, as the case may be, by a Debtor.

All expenses and costs of the Auction, if any, which are presented for payment prior to the conducting of the Auction shall be paid from Operations Income by the Debtor as an Ordinary Course Administrative Claim upon presentation of an appropriate bill, invoice or other evidence of such cost or expense to the Debtor. All costs and expenses of the Auction whether arising before or after the Auction, not so paid, including any commission, fee, or other charge shall be paid as a Non-Ordinary Course Administrative Claim as elsewhere provided in the Plan.

The Debtors shall continue to manage and operate its business up through the Effective Date in accordance with Sections 1107 and 1108 of the Code, and applicable orders of the

Bankruptcy Court entered during the course of the case on such terms, and with restrictions or provisions, as may be required in the Confirmation Order.

On the day prior to the Effective Date, all the accumulated Operations Income and other Cash (including any credit card receipts then in process) shall be delivered and conveyed to the Disbursing Agent.  On the Effective Date, all Cash paid by the Buyer at Closing (net of any recording or other closing costs required to be paid at Closing by the Debtor) shall also be paid to the Disbursing Agent.  Upon receipt of the Cash proceeds from the Closing, the Operations Income and other Cash, the Disbursing Agent shall file with the Bankruptcy Court, and deliver to Lender, if the Disbursing Agent is not the Lender, a written notice of receipt of such Cash and the amount of additional Cash needed, if any, to pay all Administrative Claims, Tax Claims, Class 1 Claims, Class 3 Claims, and any Class 4 Claims, as provided in the Plan.  If the Lender is the successful bidder by credit bid, then promptly upon receipt of the written notice of the Disbursing Agent of the amount of additional Cash needed, if any, to pay, in full, all Administrative Claims, Tax Claims, Class 1 Claims, any Class 3 Claims, and any Class 4 Claims, the Lender shall deposit the amount needed to pay such Claims with the Disbursing Agent, and file a written notice of such deposit with the Bankruptcy Court.  Notwithstanding anything herein to the contrary, Lender's obligation to fund the Plan shall not exceed $25,000.00.  Although Lender has no obligation to do so, Lender reserves the right to further fund the Plan, if, in its sole discretion, it believes such funding is necessary to implement the terms of the Plan.

The Causes of Action include, without limitation, potential avoidance actions against those parties (including Insiders) who may have received preferential payments prior to the filing of these Bankruptcy Cases, as identified more fully in the Debtors' Schedules.  As of the Effective Date, the Causes of Action shall be assigned to the Disbursing Agent for the prosecution, litigation, settlement or such other action as the Disbursing Agent deems appropriate.  The proceeds from the prosecution of Causes of Action, if any, shall be paid to Holders of Allowed Class 4 Claims, Pro Rata, and otherwise as provided in the definition of Excess Cash.

The Lender, its counsel or its designee shall act as Disbursing Agent under the Plan. The rights and duties of the Debtor shall be transferred to the Disbursing Agent after Confirmation, so that the Disbursing Agent will receive all rights for the Debtor and be imbued and granted all the rights of a trustee in bankruptcy to pursue causes of action after Confirmation.  One Business Day after Confirmation, the Debtor, and any insider or other party in custody of the property or funds of the Debtor will immediately transfer all funds to the Special Master or its designee without any setoff or other defenses raised.

**ON THE EFFECTIVE DATE, THE DEBTOR AND THE BANKRUPTCY ESTATES SHALL BE DEEMED, AND THE CONFIRMATION ORDER SHALL SO PROVIDE, TO HAVE RELEASED UNCONDITIONALLY THE LENDER, ITS ALLIED AND AFFILIATED ENTITIES, ITS SERVICER(S), ITS SPECIAL SERVICER(S), AND THE OFFICERS, DIRECTORS, PARTNERS, EMPLOYEES, AGENTS, SERVANTS AND ATTORNEYS OF ALL OF THEM, FROM ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, DEFENSE OR OFFSET WHATSOEVER, THAT MAY BE, HAS BEEN, HAVE BEEN, OR COULD HAVE BEEN ASSERTED FROM THE BEGINNING OF THE WORLD THROUGH THE EFFECTIVE DATE.  THE ABOVE RELEASE**

SHALL BE FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, ANY CLAIM OR CAUSE OF ACTION PURSUANT TO SECTIONS 542-554 OF THE CODE, INCLUSIVE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE; THE CONFIRMATION ORDER SHALL CONSTITUTE THE ENTRY OF AN INJUNCTION, AS OF THE EFFECTIVE DATE, RESTRAINING AND ENJOINING THE DEBTORS AND THE BANKRUPTCY ESTATES FROM ASSERTING ANY SUCH CLAIM OR CLAIMS, WHETHER DIRECTLY OR INDIRECTLY.

EXCEPT AS PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE BANKRUPTCY ESTATE WILL BE PERMANENTLY RESTRAINED AND ENJOINED AFTER THE CONFIRMATION DATE: (I) FROM COMMENCING, CONTINUING, OR TAKING ANY ACT TO ENFORCE AGAINST THE DISBURSING AGENT, THE LENDER, OR THE BUYER ANY RIGHT, CLAIM OR CAUSE OF ACTION ARISING UNDER OR RELATED TO ANY EQUITY SECURITY OR ANY CLAIM; (II) FROM CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DISBURSING AGENT, THE LENDER OR THE BUYER, OR ANY RIGHT, CLAIM OR CAUSE OF ACTION ARISING UNDER OR RELATED TO ANY EQUITY SECURITY OR ANY CLAIM; (III) FROM ASSERTING ANY SETOFF, RIGHT OF SUBROGATION, INDEMNIFICATION, CONTRIBUTION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE DISBURSING AGENT, LENDER OR BUYER, OR ANY RIGHT, CLAIM OR CAUSE OF ACTION ARISING UNDER OR RELATED TO ANY EQUITY SECURITY OR ANY CLAIM; AND (IV) FROM PERFORMING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN AND ORDERS OF THE BANKRUPTCY COURT; *PROVIDED, HOWEVER,* THAT EACH HOLDER OF A CLAIM OR INTEREST MAY, TO THE EXTENT PERMITTED BY AND IN ACCORDANCE WITH THE PROVISIONS OF THE PLAN, COMMENCE OR CONTINUE ANY ACTION OR PROCEEDING TO DETERMINE THE AMOUNT OF ITS CLAIM OR INTEREST IN THE BANKRUPTCY COURT, AND ALL HOLDERS OF CLAIMS OR INTERESTS WILL BE ENTITLED TO ENFORCE THEIR RIGHTS UNDER THE PLAN..

E.    **Risk Factors**

Assuming that the Plan is confirmed, the Plan's success is not contingent upon the future operations of the Property since it is being conveyed to the Lender hereunder.

## F.   Executory Contracts and Unexpired Leases

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  Such contracts will be then assigned to the buyer of the Property.

If you object to the assumption of your unexpired lease or executory contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in the Plan, or the subject of a separately filed Motion to Assume or Reject, will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

The Confirmation Order shall serve as notice of termination of any management agreements.  Upon the Effective Date, any management agreements will be considered terminated by its own terms.  Any post-petition amounts owed as Allowed Administrative Claims on account of said termination will be paid, including Allowed Administrative Claims for any post-petition services performed by the D'Souzas which remain unpaid.  Lender believes there will be no pre-petition unsecured claims for any parties on account of the termination.  If such a termination is, for any reason, found to be inappropriate, the management agreement will be deemed rejected as of the Effective Date.

*The deadline for filing a proof of claim based on a claim arising from the rejection of a lease or contract is thirty (30) days after the rejection of any lease or contract, notwithstanding the bar date.*  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

## G.   Tax Consequences of Plan

> *CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.*

The Debtor does not anticipate any additional tax consequences related to its bankruptcy case or the implementation of the Plan.

## H.   Rule 3016(c) Notice

**THE ENTRY OF THE CONFIRMATION ORDER SHALL BE DEEMED TO BE THE ENTRY OF A FINAL ORDER DETERMINING THE ALLOWED AMOUNT OF THE CLASS 1 CLAIM.  SUCH CLAIM SHALL NOT BE SUBJECT TO OBJECTION,**

**SETOFF, COUNTERCLAIM, OFFSET OR REDUCTION OF ANY TYPE, DESCRIPTION, KIND OR MANNER, AND THE ENTRY OF THE CONFIRMATION ORDER SHALL BE DEEMED TO BE A FULL, FINAL AND COMPLETE RELEASE AND DISCHARGE OF ANY AND ALL CAUSES OF ACTION WHICH EITHER DEBTOR OR THE BANKRUPTCY ESTATE HAVE, HAD OR EVER COULD OR MIGHT HAVE HAD AGAINST LENDER, ITS ATTORNEYS, ITS ALLIED AND AFFILIATED ENTITIES, ITS SERVICER, ITS SPECIAL SERVICER, AND THE OFFICERS, DIRECTORS, PARTIES, AGENTS, SERVANTS AND EMPLOYEES OF ALL OF THEM; THE CONFIRMATION ORDER SHALL FURTHER CONSTITUTE AN INJUNCTION, AS OF THE EFFECTIVE DATE, PERMANENTLY RESTRAINING AND ENJOINING THE ASSERTION OF ANY SUCH CLAIM, CAUSE OF ACTION, SETOFF OR REDUCTION WHATSOEVER BY EITHER OR BOTH OF THE DEBTOR, AND AGAINST THE LENDER, ITS ATTORNEYS, ITS ALLIED AND AFFILIATED ENTITIES, ITS SERVICER, ITS SPECIAL SERVICER, THE BUYER, AND THE OFFICERS, DIRECTORS, PARTIES, AGENTS, SERVANTS AND EMPLOYEES OF ALL OF THEM**

**CREDITORS, INTEREST HOLDERS AND OTHER PARTIES-IN-INTEREST ARE DIRECTED TO SUCH PROVISIONS OF THIS DISCLOSURE STATEMENT AND THE PLAN FOR A MORE COMPLETE EXPLANATION AND DESCRIPTION OF THE RELEASES AND INJUNCTIONS, THE PERSONS SO RELEASED AND/OR ENJOINED, AND THE CIRCUMSTANCES UNDER WHICH SUCH OCCURS**

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmed, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity security interest holder at least as much as the creditor or equity security interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Lender believes that the classes of secured creditor (Class 1) and unsecured claims (Class 3) are impaired, but that some holders of Class 3 claims may not be entitled to vote to accept or reject the Plan on account of their insider status. The Lender believes

that the Lessee Depositors (Class 2) are unimpaired and that holders of claims in these classes, therefore, do not have the right to vote to accept or reject the Plan.

The Lender further believes that the Equity Interests in the Debtor (Class 4) are deemed to reject since such class will not receive or retain any property under the Plan and that holders of such interests in this class, therefore, do not have the right to vote to accept or reject the Lender's Plan.

## 1.    What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline set by the Bankruptcy Court for filing a proof of claim in this case was December 11, 2012.*

*The deadline for filing objections to claims has not been set.*

## 2.    What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity security interest has the right to vote only if it is in a class which is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

## 3.    Who is Not Entitled to Vote?

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity security interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code or § 1129(a)(9)(D);

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

*Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.*

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for their claim in each different class.

### B.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by cram down on non-accepting classes.

### 1.    Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2.    Treatment of Non-Accepting Classes

Even if one or more impaired classes reject the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cram-down plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex*

### C.    Liquidation Analysis

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest Holders who do not accept the Plan will receive at least as much under the Plan as such

Creditors and Equity Interest Holders would receive in a chapter 7 liquidation. Since there are no substantial assets owned by Debtor which are not subject to the liens of Lender, in a hypothetical Chapter 7 liquidation, no party would receive any payout whatsoever except Lender, the proponent of this Plan.  Therefore, this Plan is much more favorable to creditors of the Debtor, including post-petition creditors, then a chapter 7 liquidation.

### D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1.    Ability to Fund Plan

The Lender believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The distributions under the Lender's Plan are not contingent upon future operations of the Property.  The Lender has agreed to fund the Plan sufficient to cover all expenses with up to $25,000 in additional funds.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    Binding Effect of Confirmation

In accordance with § 1141(a) of the Code, the provisions of a confirmed plan bind the Debtor, any entity issuing securities under the Plan, any entity acquiring property under the Plan, and any Creditor, equity security holder, or general partner in the Debtor, whether or not the Claim or Interest of such Creditor, equity security holder or general partner is impaired under the Plan and whether or not such Creditor, equity security holder or general partner has accepted the Plan.

### B.    Modification of Plan

The Lender may modify the Plan at any time before confirmation of the Plan. However, if the Plan is modified, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Lender may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.    Final Decree

Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Lender, or such other party as the Court shall designate in

the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

1945752 v1

DATED this 3rd day of May, 2013.

Respectfully submitted,

/s/ Michael A. Nardella
Denise D. Dell-Powell, Esq.
Florida Bar No.:   890472
Michael A. Nardella, Esq.
Florida Bar No.: 51265
**BURR & FORMAN, LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL  32801
Phone:  (407) 540-6607
Fax:  (407) 264-6466
Email: denise.dell-powell@burr.com
Email: michael.nardella@burr.com

**ATTORNEYS FOR Wells Fargo Bank, N.A. as Trustee
for the registered holders of J.P. Morgan Chase
Commercial Mortgage Securities Corp., Commercial
Mortgage Pass-Through Certificates, Series 2005-
CIBC11, acting by and through its special servicer C-III
Asset Management LLC**

1945752 v1