UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

GASLIGHT SQUARE, INC.,

                Debtor.

_____/

Case No.:  8:12-bk-14765-KRM
Chapter 11

## **CHAPTER 11 PLAN OF LIQUIDATION, DATED MAY 3, 2013**

Denise D. Dell-Powell, Esq.
Florida Bar No.:  890472
Michael A. Nardella, Esq.
Florida Bar No.: 51265
**BURR & FORMAN, LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL  32801
Phone:  (407) 540-6607
Fax:  (407) 264-6466
Email: denise.dell-powell@burr.com
Email: michael.nardella@burr.com

**ATTORNEYS FOR Wells Fargo Bank, N.A. as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-CIBC11, acting by and through its special servicer C-III Asset Management LLC**

Dated: May 3, 2013.

## PLAN OF REORGANIZATION

Wells Fargo Bank, N.A. as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-CIBC11 acting by and through its special servicer, C-III Asset Management LLC (the "Lender"), as the largest creditor of Gaslight Square, Inc., proposes the following chapter 11 plan pursuant to subsection 1121(c) of the Bankruptcy Code (the "Plan"). Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Lender reserves the right to alter, amend, modify, revoke or withdraw this Plan.

## ARTICLE I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

Definitions. Unless the context otherwise requires, the following terms shall have the respective meanings specified below whether presented in the Plan or Disclosure Statement with initial capital letters. Such meaning shall be equally applicable to both the single and plural forms of such term, unless the context requires otherwise. Any term used in the initial capitalized form that is not defined in the Plan but that is defined in the Code or the Bankruptcy Rules shall have the meaning ascribed to such term by the Code or the Bankruptcy Rules. As used herein:

1.1     Administrative Claim Bar Date means the date (or dates), to be set by the Bankruptcy Court as the last date for filing all requests for payment of Administrative Claims.

1.2     Administrative Claim means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses, of preserving the estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor in Possession in connection with the conduct of its business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code.

1.3     Allowed means where referenced to any Claim (other than a Disputed Claim) or Equity Interest, (a) any Claim against or Equity Interest in the Debtor which has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in an amount in excess of $0.00 and not disputed or contingent, (b) any Claim or Equity Interest Allowed hereunder, (c) any Claim or Equity Interest which is not Disputed, or any Claim or Equity Interest which, if Disputed, (i) as to which, pursuant to the Plan or a Final Order of the Bankruptcy Court, the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (ii) has been Allowed by Final Order; provided, however, that any Claim or Equity Interest allowed solely for the purpose of voting to accept or

reject the Plan pursuant to a Final Order of the Bankruptcy Court shall not be considered an "Allowed Claim" or "Allowed Equity Interest" hereunder. Unless otherwise specified herein or by Final Order of the Bankruptcy Court, "Allowed Administrative Expense Claim," "Allowed Claim," or "Allowed Equity Interest" shall not for purposes of computation of distributions under the Plan, include interest on such Administrative Expense Claim, Claim or Equity Interest from and after the Commencement Date.

1.4    Allowed Claim means all or that portion of a Claim that is Allowed.

1.5    Auction means the procedure for offering for sale the Purchased Assets as described in this Plan.

1.6    Ballot means the form of ballot accompanying the approved Disclosure Statement distributed to holders of Claims or Equity Interests entitled to vote on the Plan.

1.7    Ballot Date means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court.

1.8    Bank Accounts means any and all bank accounts of the Debtor.

1.9    Bankruptcy Case means the bankruptcy case of the Debtor pending before the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, pursuant to Chapter 11 of the Code, bearing case number 8:12-bk-14765-KRM.

1.10    Bankruptcy Code means title 11 of the United States Code, as amended from time to time; as applicable to the Chapter 11 Case.

1.11    Bankruptcy Court means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division having jurisdiction over the Chapter 11 Case.

1.12    Bankruptcy Estate means the estate created pursuant to Section 541 of the Code by the commencement of the Bankruptcy Case and shall include all Estate Assets.

1.13    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure and Official Bankruptcy Forms, as amended and promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court.

1.14    Bar Date means the last date for filing Proofs of Claim in this Bankruptcy Case. The Bankruptcy Court previously set December 11, 2012.

1.15    Bid Procedures or Bidding Procedures mean the bidding and sale procedures governing the Sale of the Purchased Assets and attached to the Debtor's Motion for Sale.

1.16    Business Day means any day of the week exclusive of Saturdays, Sundays, and "legal holidays." As used herein, "legal holidays" shall have the same meaning as used in Bankruptcy Rule 9006.

1.17    Buyer means the successful bidder at the Auction, but only if such successful bidder actually consummates the Sale.    If the successful bidder at the auction fails to consummate the Sale, Buyer shall mean and refer to such other bidder, as established in accordance with the Auction procedure, that, in fact, consummates a Sale.

1.18    Cash means cash or cash equivalents, including, but not limited to, checks, bank deposits and other lawful currency of the United States of America and its equivalents.

1.19    Cash Collateral Order means the Final Order Authorizing Use of Cash Collateral and Granting Lender Adequate Protection entered by the Bankruptcy Court on January 9, 2013, as it may have been amended or modified, as in effect on the Effective Date.

1.20    Cause of Action means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law, equity or otherwise, accruing to the Debtor or the Bankruptcy Estate.

1.21    Claim has the meaning set forth in section 101 of the Bankruptcy Code.

1.22    Claimant means the holder of a Claim against the Debtor.

1.23    Class means a category of holder of Claims or Equity Interests as set forth in the Plan.

1.24    Closing means the execution of documents in connection with, and the actual consummation of, the Sale to the Buyer.

1.25    Collateral means any property or interest in property of the estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

1.26    Commencement Date or Petition Date means the date Debtor filed its petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code which in this case is September 27, 2012.

1.27    Confirmation means the process leading to and including the entry of by the Bankruptcy Court the Confirmation Order.

1.28    Confirmation or Confirmation Date means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.29    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.30    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.31    Contingent Claim means any Claim which has not been finally allowed as of the Confirmation Date, including, without limitation, any Claims which may be asserted as the result of the rejection of an executory contract or unexpired lease pursuant to this Plan.

1.32    Creditor has the meaning as set forth in Section 101(10) of the Bankruptcy Code.

1.33    Debtor means Gaslight Square, Inc., a Florida corporation.

1.34    Debtor in Possession means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

1.35    Debtor's Motion for Sale means the Motion filed, or to be filed, by the Debtor for entry of an order (i) approving bidding procedures; (ii) authorizing the Debtor to sell all or substantially all of its assets pursuant to an auction in compliance with the Bidding Procedures; (iii) approving the notice of the Sale; and, (iv) granting such other and further relief as this Court deems necessary.

1.36    Disbursing Agent means Lender, its counsel or its designee.

1.37    Disclosure Statement means the disclosure statement relating to the Plan, including without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code

1.38    Disputed means the portion (including, when appropriate, the whole) of any Claim as to which: (a) a proof of Claim has not been timely and properly filed under applicable law or allowed by Final Order of the Bankruptcy Court or which has not been listed by the Debtor in its Schedules, or has been listed as liquidated in an amount of $0.00 or as disputed or contingent; (b) an objection, motion to estimate, or complaint to determine the validity, priority or extent of any Lien asserted by the claimant with respect to the Claim has been timely filed; and (c) such objection, motion or complaint has not been withdrawn or granted, denied or otherwise determined by Final Order. Before the time that such an objection, motion or complaint has been filed, a Claim shall be considered Disputed to the extent, if any, that the amount of the Claim specified in a proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtor in its Schedules; in its entirety, if any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent or unliquidated in the Schedules; in its entirety, if any corresponding Claim scheduled by the Debtor in its Schedules places the Claim in a separate classification from that asserted in a proof of Claim, or in its entirety, if no corresponding Claim has been scheduled by the Debtor in its Schedules.

1.39    Disputed Claim Amount means the higher of the amount set forth in the proof of Claim or listed on the Schedules relating to a Disputed Claim; provided, however, if a Disputed Claim is estimated for allowance purposes under section 502(c) of the Bankruptcy Code, the amount so estimated pursuant to Final Order of the Bankruptcy Court shall be the Disputed Claim Amount.

1.40    Distribution shall mean the Distribution to the holders of Allowed Claims and Equity Interests.

1.41    Distribution Date means the first Business Day occurring after the Effective Date, on which the Disbursing Agent will be able to make distributions of cash, under the Plan to the holders of Allowed Claims as may be specified by the Plan.

1.42    Effective Date means the date of the Closing provided that no appeal of Confirmation Order is pending; provided further, however, that the Effective Date shall not occur until Lender files a notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met.  In the event that the appeal of the Confirmation Order is pending but no stay of the Confirmation Order is then in effect, the Effective Date may still occur if Lender so stipulates in writing.

1.43    Estate Asset means all of the assets, property and cash of the Debtor, as defined in Section 541 of the Code, wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action and property located in or appurtenant to Gaslight Square.

1.44    Exculpated Party or Exculpated Parties means the Lender and its agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, servicers, shareholders, or members, or any of their successors or assigns, and specifically includes the Special Master.

1.45    Final Order means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal, that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

1.46    Gaslight Square means the retail and office center located at 6798 Crosswind Drive, St. Petersburg, Florida known as Gaslight Square and owned by the Debtor.

1.47    Guarantors means any person or entity who executed a personal guaranty in favor of the Lender in relation to loans made to Debtor by Lender.

1.48    Impaired means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.49    Interest means any and all equity interests or ownership interests in the Debtor and issued by the Debtor prior to the Petition Date whether or not certified, transferrable, voting or denominated "stock" or similar security.

1.50    Lender means Wells Fargo Bank, N.A. as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through

Certificates, Series 2005-CIBC11, acting by and through its special servicer C-III Asset Management LLC.

*1.51    Intentionally left blank*

1.52    Lessee means any lessees and/or tenants under any lease agreement with the Debtor or Debtor in Possession, which consist of the following, subject to change:

> United States of America VA
> Brinker Florida, Inc.
> S&G Service of Tampa Bay, Inc.
> The Learning and Tutoring Center
> Above the Barre, Inc.
> Bath & Biscuit, LLC
> TRO, Inc.
> Raye's Realty, Inc.
> Smart RG, Inc.
> Reachit.Org, Inc.

1.53    Lien means, with respect to any of the Debtor's assets or property, along with the other assets of the estate, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind affecting such asset or property, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor, the Lender, the Disbursing Agent or any other party with standing to bring such a challenge.

1.54    Mortgage means that certain Mortgage and Security Agreement dated January 13, 2005 by and between Debtor, as Borrower, and J.P. Morgan Chase Bank, N.A., as Bank, as it may have been amended, modified, or assigned, and in effect as of the Petition Date.

1.55    Other Priority Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.56    Personal Property means any assets owned by the Debtor, other than Gaslight Square.

1.57    Plan means this Chapter 11 plan of reorganization, including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

1.58    Plan Supplement means the form of documents contemplated by Section 5.2 hereof.

1.59    Pledged Collateral means all collateral pledged to the Lender by the Debtor to secure any obligations under the Loan Agreement including all Collateral described in the Mortgage along with the Property, all the Purchased Assets, the Bank Accounts, any Unused Retainer, and all rights under the Cash Collateral Order and as further described in Claim 2-1.

1.60    Priority Tax Claim means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.61    Priority Secured Tax Claim means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8), and more particularly defined by § 1129(a)(9)(D), of the Bankruptcy Code.

1.62    Property means all assets or property of the Bankruptcy Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor, as defined in 11 U.S.C. § 541.

1.63    Purchased Assets means all of the Debtor's Property, less and except Operations In Cash, Causes of Action, and any Executory Contracts and unexpired leases of the Debtor which have been previously rejected or which are not authorized to be assumed or assigned by the Bankruptcy Court.

1.64    Qualified Bidder shall mean a person who submits a bid for the Purchased Assets and who has the financial qualifications satisfactory to Debtor and Lender necessary to place a Qualified Bid (as defined in the Bid Procedures) for the Purchased Assets.

1.65    Sale shall mean the purchase of the Purchase Assets by the Buyer arising from the Auction.

1.66    Consulting Co. means Consulting CFO, Inc., or a different consulting entity, to the extent such entity serves as the Special Master pursuant to Section 12.1 of this Plan.

1.67    Schedules means the Schedules of Assets and Liabilities, the List of Holders of Equity Interests, and the Statements of Financial Affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

1.68    Special Master means Lender, its counsel or its designee.

1.69    Solicitation means the solicitation by the Lender as proponent of the Plan that includes the Disclosure Statement and related materials and, where appropriate, the Ballot.

1.70    Successful Bid means the full amount of the offer for purchase of the Purchase Assets at Auction which Bid is accepted by the Lender.

1.71    Successful Bidder means the party who submits the Successful Bid for the Purchased Assets.

1.72    Tenant Deposits means any deposits made by any Lessees under any lease or similar agreement with the Debtor or Debtor in Possession.

1.73    Tenant Leases means any lease agreement with any of the Lessees.

1.74    Unimpaired means a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.75    United States Trustee has the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.*, and, as used in the Plan, refers to the Office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

1.76    U.S. Trustee's Fee Claims means any fees assessed against the Debtor's Bankruptcy Estate pursuant to 28 U.S.C. § 1930(x)(6).

1.77    Unsecured Creditors means the holder of any Allowed Unsecured Claim and any undersecured portions of any ostensibly secured claim.

1.78    Unused Retainer means any retainers paid by the Debtor or Debtor in Possession to any professional before or after the Petition Date that remains unused after the payment of any Allowed Administrative Expense Claim to such professional.

All other words or terms used in this Plan which are defined in section 101 of the Bankruptcy Code (entitled "Definitions") shall have the meaning(s) ascribed to such words as they are defined in section 101 of the Bankruptcy Code, except as may be specifically defined elsewhere in the Plan.

## ARTICLE II.

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123 (a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Priority Secured Tax Claims are not classified and are not entitled to vote on this Plan.

2.1    Administrative Claims. Each holder of an Allowed Administrative Claim shall receive from the Lender with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Lender, in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Lender upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under section 327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed by a date set by this Court.  All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor, and if no timely request for payment of an Administrative Claim is received, such claims shall be forever barred and shall

not be assertable in any manner against the Debtor or the estate, provided no request for payment shall be required with respect to Administrative Claims that have been previously paid or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability.

2.2     Priority Non-Tax Claims. Each holder of an Allowed Priority Non-Tax Claim shall be paid in full or pursuant to an agreement between Lender and such claimant on the Effective Date. The Lender is not aware of any Allowed Priority Non-Tax Claims at this time.

2.3     Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive payment of its Allowed Claim, in full, on or before the Effective Date or pursuant to an agreement between Lender and the Priority Tax Claimant.

2.4     Priority Secured Tax Claims. Each holder of an Allowed Priority Secured Tax Claim shall receive payment of its Allowed Claim, in full, on or before the Effective Date.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS UNDER PLAN

3.1     Introduction. Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Equity Interests in the Debtor.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2     Summary of Classes.

| Class | Impaired/Unimpaired; Entitlement to Vote |
| --- | --- |
| Class 1 – Secured Claim of the Lender | Impaired – Entitled to vote |
| Class 2 – Lessee Depositors | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 3 – Unsecured Claims | Impaired – Entitled to vote |
| Class 4 – Equity Interests in Debtor | Impaired – Deemed to have rejected this Plan and not entitled to vote |

3.3     Class 1 – Secured Claim of the Lender. On account of its Allowed Class 1 Secured Claim, Lender shall as of the day prior to the Effective Date set off against the Allowed

Class 1 Claim the amounts then held by or for it in any repair and replacement reserve, tax and insurance reserve, or any other reserve or other trust account maintained in accordance with the applicable loan documents or any Order entered in the Bankruptcy Cases, and either (i) in the event the Lender (or its designee) is the Buyer, on the Effective Date have conveyed to it, or its designee, free and clear of all liens, claims and encumbrances, all of the Purchased Assets, and have assumed and assigned to it, or its designee, all executory contracts and unexpired leases of the Debtor not previously rejected; or (ii) on the Effective Date receive payment from the Disbursing Agent of the remaining amount of its Allowed Secured Claim from the proceeds of the sale of the Purchased Assets.  Notwithstanding anything herein to the contrary, the Lender or its designee will be permitted to credit bid, at the Auction, up to the amount of its total Claim against the Debtor.  In addition, any excess cash collateral not necessary to fund implementation of this Plan will be transferred to the Lender at the Lender's direction.  This Class is Impaired.

      3.4     <u>Class 2 – Lessee Depositors.</u> The Tenant Deposits held by the Debtor for the benefit of the Lessee Depositors shall be assigned to and held by the Lender or Buyer. The rights of the Lessee Depositors shall be Unimpaired by the Plan.

      3.5     <u>Class 3 – Unsecured Claims.</u> The Lender will voluntarily carve out of its cash collateral sufficient funds such that all holders of Class 3 Allowed Claims will share pro-rata in the pool of $5,000.00, which will result in impairment of the holders of the Class. Lender will not assert an unsecured deficiency claim for payment in this Class.

      3.6     <u>Class 4 – Equity Interests.</u> All Equity Interests in the Debtor will be extinguished on the Effective Date of the Plan. This Class is Impaired.

      3.7     <u>Classes Entitled to Vote.</u> Class 1 – Secured Claim of the Lender is entitled to vote to accept or reject this Plan. By operation of law, Class 2 is Unimpaired and are deemed to have accepted this Plan and, therefore, are not entitled to vote.  Class 3 is Impaired and entitled to vote, but any insider claimants are not.  By operation of law, holders of Class 4, the Equity Interests in Debtor, are impaired, deemed to have rejected this Plan, and are not entitled to vote.

      3.8     <u>Acceptance by Impaired Classes.</u> An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code, (i) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the Holders of more than one-half in number of the Allowed Claims actually voting in this Class have voted to accept this Plan.

      3.9     <u>Cramdown.</u> To the extent necessary, except with respect to Class 1, the Lender shall request confirmation of this Plan, as is may be modified from time to time, pursuant to section 1129(b) of the Bankruptcy Code. The Lender reserves the right to modify this Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**ARTICLE IV.**

**<u>ADMINISTRATIVE EXPENSES AND TAX CLAIMS</u>**

4.1    Administrative Claims.

(1)    Non-Ordinary Course Administrative Claims

(a)    Any person, including any Professional who has rendered services to one or both Debtors during the course of the Bankruptcy Cases, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503 (b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Order of the Bankruptcy Court, file an application, motion, or request, as called for by the Bankruptcy Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of a Non-Ordinary Course Administrative Claim, other than the Disbursing Agent, shall bar such a claimant from seeking recovery on such Claim.

(b)    Each holder of a Non-Ordinary Course Administrative Claim shall be paid by the Disbursing Agent one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on the Effective Date or such later date as may be agreed to by such Holder, or, if the Claim does not become an Allowed Claim prior to the Effective Date, as soon as practicable after the date the Allowed Amount of such Claim is determined by Final Order of the Bankruptcy Court. As provided for in Article VII, Section G of the Plan, to the extent the Disbursing Agent has insufficient cash as of the Effective Date to pay Non-Ordinary Course Administrative Claims, then and in such event Lender shall make the Lender Deposit. However, nothing in this provision of the Plan shall preclude the Disbursing Agent from paying any holder of a Non-Ordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date provided that such Holder consents to such payment terms.

(2)    Ordinary Course Administrative Claims

Ordinary Course Administrative Claims will be resolved through the performance of the obligations by the Debtor in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims. To the extent any such Claim remains outstanding as of the Effective Date, such shall be paid by the Disbursing Agent from available Cash; *provided, however,* that if insufficient Cash is available to the Disbursing Agent to pay such expenses, such shall be paid from the Lender Deposit.

4.2    Tax Claims.

Each Holder of an Allowed Tax Claim shall be paid by the Disbursing Agent one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise agreed by the Holder of such Claim, on the Effective Date, or, if the Claim does not become an Allowed Claim prior to the Effective Date, as soon as practicable after the date the Allowed Amount of such Claim is

determined by Final Order of the Bankruptcy Court. As provided in Article VII, Section G of the Plan, to the extent the Disbursing Agent has insufficient Cash as of the Effective Date to pay Allowed Tax Claims, then and in such event such shall be paid from the Lender Deposit. However, nothing in this provision of the Plan shall preclude the Disbursing Agent from paying any Holder of an Allowed Tax Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date provided that such Claim Holder consents to such different payment terms.

## ARTICLE V.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     Assumption and Assignment to Buyer.  All executory contracts and expired leases of the Debtor which have not been previously rejected shall be assumed and assigned to the Buyer effective upon the Effective Date and the Confirmation Order shall so authorize and provide.

5.2     Claim for Rejection Damages.  To the extent a Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Sections 365 and 502 of the Code arising from the rejection of such executory contract or unexpired lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from such rejection shall be a Class 4 Claim.  It is expected that the Debtors will not be authorized to reject any executory contract or unexpired lease prior to the Confirmation Date without the consent of the Lender. Nothing herein shall limit the rights of any party under Section 365(h) of the Code.

5.3     Cure Payments.  To the extent assumption and assignment of any executory contract or unexpired lease of a Debtor is authorized by the Bankruptcy Court at the Confirmation Hearing or otherwise in connection with this Plan, and/or any executory contract or unexpired lease of a Debtor is deemed assumed and assigned pursuant to this Article, the payment of the amount of any arrearage thereunder shall be made, in full, by the Disbursing Agent on the Effective Date; to the extent insufficient Cash exists to make any such Payment, such shall be made from the Lender Deposit.

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1     The Auction.  The Auction will be conducted on a date to be set by the Bankruptcy Court, but in no event more than 45 days after entry of the Confirmation Order.  At the Auction, all of the Purchased Assets shall be made available for sale.  The Debtors and each of their directors, officers, employees, managers and agents shall comply with the Sale Procedures, including, without limitation, by providing reasonable access to the Debtors' books, records, executives, and manager to the Qualified Bidders for the purpose of conducting due diligence  The sale contemplated by the Auction shall be on an all cash basis (except to the

extent subject to credit bid by the Lender), with the Closing to occur within fifteen (15) days after the Auction.

6.2     Bid Procedures.  In accordance with Bankruptcy Rule 6004(f)(1), sale of property outside the ordinary course of business may be conducted by private sale or auction.  The procedures set forth on Exhibit B to the Debtor's Motion for Sale shall govern the Auction of the Purchased Assets in a single sale to the Successful Bidder, provided, however, that the Sale Procedures may be modified or amended by order of the Bankruptcy Court before or after the Confirmation Hearing.

6.3     Injunction.

**THE ENTRY OF THE CONFIRMATION ORDER SHALL BE DEEMED TO BE THE ENTRY OF A FINAL ORDER DETERMINING THE ALLOWED AMOUNT OF THE CLASS 1 CLAIM.  SUCH CLAIM SHALL NOT BE SUBJECT TO OBJECTION, SETOFF, COUNTERCLAIM, OFFSET OR REDUCTION OF ANY TYPE, DESCRIPTION, KIND OR MANNER, AND THE ENTRY OF THE CONFIRMATION ORDER SHALL BE DEEMED TO BE A FULL, FINAL AND COMPLETE RELEASE AND DISCHARGE OF ANY AND ALL CAUSES OF ACTION WHICH EITHER DEBTOR OR THE BANKRUPTCY ESTATE HAVE, HAD OR EVER COULD OR MIGHT HAVE HAD AGAINST LENDER, ITS ATTORNEYS, ITS ALLIED AND AFFILIATED ENTITIES, ITS SERVICER, ITS SPECIAL SERVICER, AND THE OFFICERS, DIRECTORS, PARTIES, AGENTS, SERVANTS, AND EMPLOYEES OF ALL OF THEM; THE CONFIRMATION ORDER SHALL FURTHER CONSTITUTE AN INJUNCTION, AS OF THE EFFECTIVE DATE, PERMANENTLY RESTRAINING AND ENJOINING THE ASSERTION OF ANY SUCH CLAIM, CAUSE OF ACTION, SETOFF OR REDUCTION WHATSOEVER BY EITHER OR BOTH OF THE DEBTOR, AND AGAINST THE LENDER, ITS ATTORNEYS, ITS ALLIED AND AFFILIATED ENTITIES, ITS SERVICER, ITS SPECIAL SERVICER, THE BUYER, AND THE OFFICERS, DIRECTORS, PARTIES, AGENTS, SERVANTS AND EMPLOYEES OF ALL OF THEM.**

6.4     Closing.  No later than fifteen (15) days after the Auction, the Successful Bidder shall close the purchase of the Purchased Assets by delivering to the Disbursing Agent cash equal to the Successful Bid and by completing and executing all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which such Successful Bid was made. At the Closing, the Successful Bidder shall have assumed from the Debtor, as appropriate, and assigned to the Buyer all of the executory contracts and unexpired leases of the Debtor which were not previously rejected. At Closing, the Debtor's officers, directors and other agents shall execute such deeds, bills of sale, assignments, closing statements and other documents as may be reasonably requested by Lender, its counsel, the Buyer, and its counsel. To the extent, if at all, Debtor and/or its officers, directors and agents fail or refuse to execute any such document, then and in such event, upon the *ex parte* application of Lender or the Disbursing Agent, the Bankruptcy Court shall enter an order pursuant to and in accordance with Bankruptcy Rule 7070 authorizing the Disbursing Agent to execute and deliver all such documents, and perform such other acts as are required to be performed by a Debtor, and

79323 v2

14

any such document so executed by, or act undertaken by, the Disbursing Agent, shall have the same effect as if executed or performed, as the case may be, by a Debtor.

6.5     Expenses of the Auction. All expenses and costs of the Auction, if any, which are presented for payment prior to the conducting of the Auction shall be paid from Operations Income by the Debtor as an Ordinary Course Administrative Claim upon presentation of an appropriate bill, invoice or other evidence of such cost or expense to the Debtor. All costs and expenses of the Auction whether arising before or after the Auction, not so paid, including any commission, fee, or other charge shall be paid as a Non-Ordinary Course Administrative Claim as elsewhere provided in the Plan.

6.6     Business Operation Prior to the Auction. The Debtors shall continue to manage and operate their business through the Effective Date in accordance with Sections 1107 and 1108 of the Code, and applicable orders of the Bankruptcy Court entered during the course of the case on such terms, and with restrictions or provisions, as may be required in the Confirmation Order. In conjunction with the Auction, the Debtor shall retain Michael Moecker, or such other person as Lender and Debtor agree, as manager and facilitator, whose scope of responsibility will be in preparation, preservation, and presentation of the Purchased Assets for the Auction, with whom the Debtor will cooperate and permit any requested access, reporting, account information, lease information, or any other requested information or access which he/she believes in his/her sole discretion is necessary for the proper marketing of the Purchased Assets.

6.7     Funding of Payments Under Plan. On the day prior to the Effective Date, all the accumulated Operations Income and other Cash (including any credit card receipts then in process) shall be delivered and conveyed to the Disbursing Agent. On the Effective Date, all Cash paid by the Buyer at Closing (net of any recording or other closing costs required to be paid at Closing by the Debtor) shall also be paid to the Disbursing Agent. Upon receipt of the Cash proceeds from the Closing, the Operations Income and other Cash, the Disbursing Agent shall file with the Bankruptcy Court, and deliver to Lender, if the Disbursing Agent is not the Lender, a written notice of receipt of such Cash and the amount of additional Cash needed, if any, to pay all Administrative Claims, Tax Claims, Class 1 Claims, Class 3 Claims, and any Class 4 Claims, as provided in the Plan. If the Lender is the successful bidder by credit bid, then promptly upon receipt of the written notice of the Disbursing Agent of the amount of additional Cash needed, if any, to pay, in full, all Administrative Claims, Tax Claims, Class 1 Claims, any Class 3 Claims, and any Class 4 Claims, the Lender shall deposit the amount needed to pay such Claims with the Disbursing Agent, and file a written notice of such deposit with the Bankruptcy Court. Notwithstanding anything herein to the contrary, Lender's obligation to fund the Plan shall not exceed $25,000.00. Although Lender has no obligation to do so, Lender reserves the right to further fund the Plan if, in its sole discretion, it believes such funding is necessary to implement the terms of the Plan.

6.8     Debtors' Causes of Action. The Causes of Action include, without limitation, potential avoidance actions against those parties (including Insiders) who may have received preferential payments prior to the filing of these Bankruptcy Cases, as identified more fully in the Debtors' Schedules. As of the Effective Date, the Causes of Action shall be assigned to the Disbursing Agent for the prosecution, litigation, settlement or such other action as the Disbursing

Agent deems appropriate. The proceeds from the prosecution of Causes of Action, if any, shall be paid to Holders of Allowed Class 4 Claims, Pro Rata, and otherwise as provided in the definition of Excess Cash.

## ARTICLE VII.

## PROVISIONS REGARDING OF THE LIQUIDATED DEBTOR

7.1    Ownership/Management. On the Effective Date, the ownership, management, control, and operation of the Debtor shall be extinguished.

## ARTICLE VIII.

## EFFECT OF CONFIRMATION

8.1    Property. As of the Effective Date, the proceeds of the Purchased Assets will be transferred to the Lender in satisfaction of the Lender's Class 1 Claim against the Debtor, except that by no means will said transfer be in satisfaction of its claims against the Guarantors.

8.2    Causes of Action. Except as provided in the Plan, as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any and all Causes of Action accruing to the Debtor and Debtor in Possession, including, without limitation, actions under sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, shall become assets of the Lender or its designee. The Lender or its designee shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Causes of Action without approval of the Bankruptcy Court.

8.3    Retention of Rights Against Guarantors. Lender shall retain all rights that it has against the Guarantors, and nothing in this Plan shall affect or impact such rights, including any rights to pursue Guarantors for the full deficiency claim.

8.4    The Lender or its designee shall not be considered a successor or mere continuation of the Debtor and will only assume those obligations expressly identified pursuant to the Plan or Confirmation Order.

## ARTICLE IX.

## RETENTION OF JURISDICTION

9.1    Jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims or Equity Interests;

(b)     To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(c)     To determine the terms for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom including the determination of defaults required to be cured;

(d)     To determine any and all applications, adversary proceedings and contested or litigated matters initiated or asserted by the Debtor on or prior to the Effective Date and initiated or asserted by the Lender or its designee subsequent to the Effective Date and arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Debtor's Chapter 11 Case, including, but not limited to: (i) Causes of Action to avoid or recover transfers (including fraudulent or preferential transfers) of the Debtor's property pursuant to sections 542 through 553 (and any other sections) of the Bankruptcy Code or applicable state law, (ii) claims and Causes of Action arising from the pre-petition activities of the Debtor, whether arising by statute or common law, whether arising under the laws of the United States, Florida or any other state having jurisdiction over any claim or controversy, and whether maintainable against third parties, affiliates or insiders of the Debtor, (iii) claims, Causes of Action and other litigation that may adversely or favorably impact or affect the Debtor's property, (iv) contests to Claims, and (v) proceedings involving offsets against Claims;

(e)     To issue orders, determinations, and rulings regarding the valuation, recovery, disposition, distribution, operation, or use of the Debtor's property, including claims to recover preferences, fraudulent conveyances, damages, or equitable relief of any type from any person, and whether initiated prior to or after the Effective Date;

(f)     To determine any and all applications, claims, Causes of Action, adversary proceedings, and contested or litigated matters that may be commenced by the Lender or its designee existing before and subsequent to the Effective Date;

(g)     To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(h)     To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan, the Plan documents and agreements executed in connection therewith or any person's obligations under the Plan or any documents and agreements executed in connection therewith, including to determine and enforce the termination of any management agreement;

(i)     To consider and act on the compromise and settlement of any Claim against or Cause of Action by or against the Debtor;

(j)      To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code; and the court may issue such orders in aid of consummation of the Plan under sections 105 and 1142 of the Bankruptcy Code, including orders to authorize, complete, and consummate the transfer of the Property to the Lender and direct the Debtor to deliver and execute any necessary agreements along with the Books and Records and any other information the Lender deems necessary or advisable in order to operate the Property;

(k)      To enter a Final Decree under Bankruptcy Rule 3022 terminating the Chapter 11 Case;

(l)      To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan, the Confirmation Order or the Effective Date;

(m)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)      To recover all assets of the Debtor and property of the Debtor's estate, wherever located;

(o)      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and

(p)      To hear any other matter not inconsistent with the Bankruptcy Code

## ARTICLE X.

## **CONFIRMATION AND CONSUMMATION OF THIS PLAN**

10.1    <u>Condition to Entry of the Confirmation Order.</u> The following are conditions precedent to the Confirmation, each of which must be satisfied or waived by the Lender:

The Plan, the Plan Supplement, and all schedules, documents, supplements and exhibits relating to this Plan shall have been filed in form and substance acceptable to the Lender.

The proposed Confirmation Order shall be in form and substance acceptable to the Lender.

10.2    <u>Conditions to Effective Date.</u> The Lender shall request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Lender:

(a)      The Confirmation Order, in form and substance satisfactory to the Lender shall be in full force and effect and not subject to any stay and shall, among other things, provide that the Lender or its designee are authorized without further approval or consent to take all actions

necessary to take the actions necessary to effectuate the Plan and, if necessary, the Special Master shall be appointed and directed to execute and deliver any and all documents necessary to implement the Plan as determined by Lender in its sole and absolute discretion. Without limiting the foregoing, the person designated by the Bankruptcy Court as the party authorized and directed to deliver and execute agreements to effectuate the Plan shall be authorized to execute, deliver, file or record such contracts, instruments and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan as determined by the Lender in its sole and absolute discretion.

(b)    All documents necessary to effectuate the Plan shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied (other than the occurrence of the Effective Date).

(c)    All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(d)    Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all individuals or entities, from commencing, enforcing, perfecting, or setting off any claim, judgment, or interest against any of Debtor's transferees, including Buyer, for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest, except as specifically provided in the Plan; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

(e)    The Closing has occurred, and all Cash from the Closing, all Operations Income and all other Cash as of the date prior to the Effective Date have been transferred to the Disbursing Agent.

(f)    All other actions, documents, and agreements necessary to implement this Plan shall have been approved by Lender and effected and executed.

(g)    The Lender Deposit, as then anticipated, if any, has been delivered to the Disbursing Agent.

(h)    The Disbursing Agent and/or the Lender have filed any notices with the Bankruptcy Court contemplated in the Plan.

(i)    Inclusion in the Confirmation Order of the releases and injunctions contemplated in subparagraph 10.3 below.

(j)    Upon the satisfaction or waiver of each of the foregoing conditions, the Lender shall notify the Bankruptcy Court, and upon filing such notice the Plan shall become Effective without further order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below have been met.

10.3    <u>Releases and Injunctions</u>.

ON THE EFFECTIVE DATE, THE DEBTOR AND THE BANKRUPTCY ESTATES SHALL BE DEEMED, AND THE CONFIRMATION ORDER SHALL SO PROVIDE, TO HAVE RELEASED UNCONDITIONALLY THE LENDER, ITS ALLIED AND AFFILIATED ENTITIES, ITS SERVICER(S), ITS SPECIAL SERVICER(S), AND THE OFFICERS, DIRECTORS, PARTNERS, EMPLOYEES, AGENTS, SERVANTS AND ATTORNEYS OF ALL OF THEM, FROM ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, DEFENSE OR OFFSET WHATSOEVER, THAT MAY BE, HAS BEEN, HAVE BEEN, OR COULD HAVE BEEN ASSERTED FROM THE BEGINNING OF THE WORLD THROUGH THE EFFECTIVE DATE. THE ABOVE RELEASE SHALL BE FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, ANY CLAIM OR CAUSE OF ACTION PURSUANT TO SECTIONS 542-554 OF THE CODE, INCLUSIVE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE; THE CONFIRMATION ORDER SHALL CONSTITUTE THE ENTRY OF AN INJUNCTION, AS OF THE EFFECTIVE DATE, RESTRAINING AND ENJOINING THE DEBTORS AND THE BANKRUPTCY ESTATES FROM ASSERTING ANY SUCH CLAIM OR CLAIMS, WHETHER DIRECTLY OR INDIRECTLY.

EXCEPT AS PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE BANKRUPTCY ESTATE WILL BE PERMANENTLY RESTRAINED AND ENJOINED AFTER THE CONFIRMATION DATE: (I) FROM COMMENCING, CONTINUING, OR TAKING ANY ACT TO ENFORCE AGAINST THE DISBURSING AGENT, THE LENDER, OR THE BUYER ANY RIGHT, CLAIM OR CAUSE OF ACTION ARISING UNDER OR RELATED TO ANY EQUITY SECURITY OR ANY CLAIM; (II) FROM CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DISBURSING AGENT, THE LENDER OR THE BUYER, OR ANY RIGHT, CLAIM OR CAUSE OF ACTION ARISING UNDER OR RELATED TO ANY EQUITY SECURITY OR ANY CLAIM; (III) FROM ASSERTING ANY SETOFF, RIGHT OF SUBROGATION, INDEMNIFICATION, CONTRIBUTION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE DISBURSING AGENT, LENDER OR BUYER, OR ANY RIGHT, CLAIM OR CAUSE OF ACTION ARISING UNDER OR RELATED TO ANY EQUITY SECURITY OR ANY CLAIM; AND (IV) FROM PERFORMING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN AND ORDERS OF THE BANKRUPTCY COURT; *PROVIDED, HOWEVER,* THAT EACH HOLDER OF A CLAIM OR INTEREST MAY, TO THE EXTENT PERMITTED BY AND IN ACCORDANCE WITH THE PROVISIONS OF THE PLAN, COMMENCE OR CONTINUE ANY ACTION OR PROCEEDING TO DETERMINE THE AMOUNT OF ITS CLAIM OR INTEREST IN THE BANKRUPTCY COURT, AND ALL HOLDERS OF CLAIMS OR INTERESTS WILL BE ENTITLED TO ENFORCE THEIR RIGHTS UNDER THE PLAN.

10.4    Waiver of Conditions. The Lender may waive, in whole or in part, the conditions to the occurrence of the Effective Date, without any notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date shall preclude the occurrence of the Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied. The waiver of a condition to the occurrence of the Effective Date shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE XI.

## PROCEDURES FOR TREATING DISPUTED CLAIMS

11.1    Objections. As of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtor may be interposed and prosecuted only by the Lender. Objections to and requests for estimation of Claims shall be filed with the Court and served on the claimant on or before the later of (a) the date that is thirty (30) days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

11.2    No Distributions Pending Allowance. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

11.3    Estimation of Claims. An Estimation Order may be used to calculate and to establish the amount of the Disputed Claims Estimated Amount. The Lender may, at any time, request that the Bankruptcy Court estimate any Disputed Claim regardless of whether the Lender has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim at any time during litigation concerning any objection to any Disputed Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may, as determined by the Bankruptcy Court, constitute (a) the Allowed amount of such Disputed Claim, (b) a maximum limitation on such Disputed Claim, or (c) in the event such Disputed Claim is estimated in connection with the estimation of other Claims within the same Class, a maximum limitation on the aggregate amount of Allowed Claims on accounts of such Disputed Claims so estimated; provided, however, that if the estimate constitutes the maximum limitation on a Claim, or on more than one such Claim within a Class of Claims, as applicable, the Lender may elect to pursue supplemental proceedings to object to any ultimate allowance of any such Disputed Claim. All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

11.4    Resolution of Disputed Claims. On or after the Effective Date, the Lender shall have the authority to settle or otherwise resolve or withdraw any objections to Claims and to compromise, settle or otherwise resolve any Disputed Claims. Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Lender shall have the authority to settle or compromise all Claims and Disputed Claims without

further review or approval of the Bankruptcy Court. On the date that is at least sixty (60) days after the date a Disputed Claim becomes an Allowed Claim, the Lender shall remit cash equal to the amount such holder would have received as of that date under the Plan if the Allowed portion of the Disputed Claim has been an Allowed Claim as of the Effective Date.

11.5   No Interest. Holders of Disputed Claims shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim unless the holder of such Allowed Claim is entitled to postpetition interest on such Claim under the Bankruptcy Code and the Plan.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

12.1   Effectuating Documents and Further Transactions. The Debtor and, if necessary, the Special Master, is authorized, required and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate, implement and consummate the Plan without any further evidence of the terms and conditions of the Plan, or any action of the Debtor to authorize such; the Special Master will be heretofore and without any further need of court orders or board actions, deemed to be authorized to execute any of the aforesaid documents or agreements or to take any of the aforementioned steps to confirm, implement and consummate the Plan. The Plan will be binding upon and inure to the benefit of the Debtor, claimants, Lender, Equity Interests and their respective successors and assigns, including, without limitation, the any designee of the Lender; and the Court may issue such orders in aid of consummation of the Plan under sections 105 and 1142 of the Bankruptcy Code. The Special Master, with the approval of the Bankruptcy Court shall act on behalf of the Debtor if the Debtor or its current officers, directors, or managing members, fails to timely perform the acts required herewith.

12.2   Payment of Statutory Fees Due the United States Trustee. All fees due and payable pursuant to 28 U.S.C. §1930(a)(6) shall be paid when due.

12.3   Severability. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

12.4   Binding Effect. The Plan shall be binding upon and inure to the benefit of the Lender, Debtor, the Bankruptcy Estate, the holders of Claims and Equity Interests, and their respective successors and assigns and, to the fullest extent permitted under the Code and other applicable law, each other person affected by the Plan.

12.5   Notices. All notices, requests and demands to or upon the Lender to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been

duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, with a copy by mail, addressed as follows:

If to the Lender:      Denise D. Dell-Powell, Esquire
**BURR & FORMAN LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL 32801
Phone: (407) 540-6607
Fax: (407) 264-6466
Email: denise.dell-powell@burr.com

If to Debtor:      Marshall G. Reissman, Esquire
**THE REISSMAN LAW GROUP, P.A.**
550 Central Avenue
St. Petersburg, FL 33707
Phone: (727) 322-1999
Fax: (727) 327-7999
Email: marshall@reissmanlaw.com

12.6   <u>Final Allowance.</u> Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after the creditors in said Classes have their Claims fully fixed and allowed by the Court, if such a Claim is disputed by proper objection. However, objections on claims in one Class will not preclude distribution to creditors in other Classes where no disputes exist regarding Claims in the other Classes.

12.7   <u>Consummation.</u> Upon completion of all payments and all transactions contemplated by this Plan, the Plan shall be deemed fully consummated, and this case shall be closed. Until substantial consummation occurs, the Lender may move for and be granted modifications of this Plan. Once full consummation is accomplished, an appropriate Order will be entered closing the Chapter 11 Case. Further, all creditors except the Lender or its designee shall be enjoined from instituting or continuing any legal action or Liens against the property of the estate, unless an Order is entered by this Court declaring a default in payments under the Plan. Further, the order closing this estate shall provide that all jurisdiction of this Court will terminate, except such jurisdiction as is otherwise provided hereinabove, or except and unless the Lender or its designee require reopening of this case to enforce any injunctions contained in the Order closing this case (or any similar beneficial orders).

12.8   <u>Disbursing Agent.</u> The Lender, its counsel, or its designee shall act in a separate capacity as Disbursing Agent under the Plan. The rights and duties of the Debtor shall be transferred to the Disbursing Agent after Confirmation, so that the Disbursing Agent will receive all rights for the Debtor and be imbued and granted all the rights of a trustee in bankruptcy to pursue causes of action after Confirmation. One Business Day after Confirmation, the Debtor, and any insider or other party in custody of the property or funds of the Debtor will immediately

transfer all funds to the Disbursing Agent or its designee without any setoff or other defenses raised.

12.9    Exemption from Certain Transfer Taxes and Recording Fees. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Lender, the Lender's designee, or Successful Bidder as the case may be, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property, including the Purchased Assets, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

12.10    Further Authorization. The Lender shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

12.11    Means of Cash Payment. Payments of Cash made pursuant to this Plan shall be made, at the option and sole discretion of the Lender, by checks drawn on, or wire transfer from, a domestic bank selected by the Lender.

12.12    Setoffs. The Lender may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or the Lender may have against the holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Lender of any such claim that the Debtor or the Lender may have against such holder.

12.13    Exculpation and Limitation of Liability.

(a)    None of the Exculpated Parties shall have or incur any liability to any person or any of their respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the Disclosure Statement, the transactions contemplated by or described in the Plan or Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan.

(b)    Notwithstanding any other provisions of this Plan, no person, no person's agents, directors, managers, officers, employees, representatives, advisors, attorneys, affiliates, shareholders, or member and no person's successors or assigns shall have any right of action against any of the Exculpated Parties for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the Disclosure Statement, the transactions contemplated by or described in the Plan or Disclosure Statement, the formulation, negotiation, or implementation

of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan.

12.14  Amendment or Modification of This Plan. Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Lender reserves the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan. A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

12.15  Severability of Plan Provisions. If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Lender to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.16  Successors and Assigns. This Plan shall be binding upon and inure to the benefit of the Debtor, and its respective successors and assigns, including, without limitation, the Lender, and the Lender's designee, as the case may be. The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

12.17  Revocation, Withdrawal, or Non-Consummation. The Lender reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Lender revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims or any release contemplated hereby), assumption of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, and no acts taken in preparation for consummation of this Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other person, (B) prejudice in any manner the rights of the Lender or any person in any further proceedings involving the Debtor, or (C) constitute an admission of any sort by the Lender or any other person.

12.18  No Admissions. Notwithstanding anything here and to the contrary, nothing contained in the Plan shall be deemed an admission by the Lender with respect to any matter set

forth herein, including, without limitation, liability on any claim or interest or the propriety of any classification of any Claim or Interest.

12.19    Governing Law. Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflicts of law of such jurisdiction.

12.20    Conflicts. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

## ARTICLE XIII.

## CONCLUSION AND CONFIRMATION REQUEST

13.1    Lender recommends that all holders of all Classes of Claims vote to accept the Plan.  Lender hereby requests Confirmation of the Plan pursuant to Section 1129(a) or, in the event the Plan is not accepted by each of those Classes of Claims or Interests entitled to vote, Section 1129(b) of the Code.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.**

DATED this 3rd day of May, 2013.

Respectfully submitted,

/s/ Michael A. Nardella
Denise D. Dell-Powell, Esq.
Florida Bar No.:   890472
Michael A. Nardella, Esq.
Florida Bar No.: 51265
**BURR & FORMAN, LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL  32801
Phone:  (407) 540-6607
Fax:  (407) 264-6466
Email: denise.dell-powell@burr.com
Email: michael.nardella@burr.com

**ATTORNEYS FOR Wells Fargo Bank, N.A. as Trustee**
**for the registered holders of J.P. Morgan Chase**
**Commercial Mortgage Securities Corp., Commercial**
**Mortgage Pass-Through Certificates, Series 2005-**
**CIBC11, acting by and through its special servicer C-III**
**Asset Management LLC**

79323 v2

SIGNATURE PAGE FOR PLAN